XAVIER BECERRA
Attorney General of California
EDWARD OCHOA
Supervising Deputy Attorney General
JAMES R. POTTER, State Bar No. 166992
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Telephone: (213) 269-6326
 Fax: (213) 897-2802
 E-mail: James.Potter@doj.ca.gov

*Attorneys for Plaintiff Department of Toxic Substances Control*

JS 6

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **California Department of Toxic Substances Control,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**World Cleaners, Inc., a California corporation; 538 West 5th Street, San Pedro, Inc., a California corporation; and Richards Cleaners, Inc., a dissolved California corporation,**<br><br>**Defendants** | Case No.: 2:16-CV-6896 DSF<br><br>**Consent Decree Between California Department of Toxic Substances Control and Defendants World Cleaners, Inc. & 538 West 5th Street, San Pedro, Inc.; Exhibits**<br><br>Judge: Hon. Dale Fischer |

**I.  INTRODUCTION**

1.  Plaintiff the State of California Department of Toxic Substances Control ("DTSC" or "Plaintiff") filed a complaint ("Complaint") in this matter pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 and the California Hazardous Substances Account Act ("HSAA"), California Health and Safety Code § 25300 against Defendants World Cleaners Inc. ("World Cleaners") and 538 West 5th Street, San Pedro, Inc.

1

("538, Inc.," collectively "Settling Defendants").[1] In the Complaint, DTSC seeks to recover costs it incurred responding to releases and/or threatened releases of hazardous substances at or from the property located at 538 West 5th Street, San Pedro, Los Angeles, California, 90731, in the County of Los Angeles, California (the "Property" )[2]. CERCLA section 107(a), 42 U.S.C. § 9607(a). Additionally, the Complaint seeks declaratory relief under CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2) that Defendants are jointly and severally liable for future Response Costs to be incurred by DTSC to address releases and/or threatened releases of hazardous substances at or from the Site and a permanent injunction.

2. In the Complaint, DTSC alleges, in relevant part, the following:

    a.    Dry cleaning operations began on the Property early in the twentieth century. In or about 1949, Richards Cleaners was incorporated. Richards Cleaners operated a dry cleaning business at the Property from roughly 1949 to 1981.

    b.    538, Inc. purchased the Property in 1981 and is the current owner of the Property.

    c.    From 1981 until recently, World Cleaners, Inc. operated the dry-cleaning facility.

    d.    Dry-cleaning operations at the Property caused releases of hydrocarbon solvents, perchloroethylene (PCE), and other hazardous dry-cleaning liquids into the soil.

    e.    In August 2006, DTSC issued an "Order for Investigation" directing World Cleaners to conduct a preliminary endangerment assessment, including additional soil sampling, soil gas sampling and groundwater

---

[1] The Complaint also named Defendant Richards Cleaners, Inc., a dissolved corporation, which is in default.
[2] The term "Site" is defined in Paragraph 29 to include the Property and the vertical and areal extent of the hazardous substance contamination that is or has been present at, beneath, and/or from the Property, including in the soil and/or groundwater

2

sampling.  Consultants for World Cleaners conducted the preliminary endangerment assessment under DTSC oversight.

      f.    In 2008, consultants employed by World Cleaners submitted the final Preliminary Endangerment Assessment to DTSC, finding that soil and groundwater at the Site had each been contaminated with PCE.

      g.    In November 2008, DTSC exercised its authority under Health and Safety Code section 25355.5 to issue a remedial action order ("2008 Remedial Action Order") to World Cleaners and Mr. Brian Sher ("Respondents"), which directed them to develop and implement a complete site remediation strategy for the Site.

      h.    World Cleaners performed some site assessment and remediation of the Property, but did not complete all of the actions required in the 2008 Remedial Action Order.

3.    DTSC is conducting Response Actions with respect to the Site as necessary to remove and remedy the hazardous substances released and/or threatened to be released at and from the Site.  DTSC's Response Actions include, but are not limited to: investigation; removal/remediation actions; enforcement/cost recovery; oversight; public participation; and compliance with the California Environmental Quality Act.  DTSC's Response Actions through December 2018 were not inconsistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300.

4.    As of January 2018, DTSC's incurred Response Costs related to the Site exceed $400,000.

5.    DTSC will continue to incur Response Costs related to the Site.  DTSC reserves all its rights in connection with such costs.  Settling Defendants reserve all their rights to object to such costs.

6.    Defendants World Cleaners and 538, Inc. filed answers to the Complaint on October 21, 2016.

19841078

7. On October 2, 2017, the Court issued an "Order Granting Motion for Summary Judgment (Dkt. No. 30)" (ECF No. 58) (hereinafter "Order Granting Summary Judgment"), which found that Settling Defendants were jointly and severally liable for DTSC's Response Costs. The Court also found that DTSC is "entitled to a declaration that Defendants are liable for future Response Costs and damages. 42 U.S.C. § 9613(g)(2)." *Id.* Further, the Court "reviewed the 2008 Remedial Action Order issued by Plaintiff to Defendants and finds that it is reasonable and should be incorporated into a permanent injunction of this Court with the exception of § 6.22." *Id.* (Paragraph 6.22 of the 2008 Remedial Action Order allows DTSC to unilaterally modify the order.)

8. DTSC and Settling Defendants ("the Parties") agree, and this Court, by entering this Consent Decree, finds, that this Consent Decree has been negotiated by the Parties in good faith, settlement of this matter will avoid expensive, prolonged and complicated litigation between the Parties, and this Consent Decree is fair, reasonable, in the public interest and consistent with the purpose of CERCLA.

**THEREFORE**, the Court, with the consent of the Parties to this Consent Decree, hereby **ORDERS, ADJUDGES, AND DECREES**, as follows:

**II. JURISDICTION**

9. The Court has subject matter jurisdiction over the matters alleged in this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367(a) and CERCLA, section 113(b), 42 U.S.C. § 9613(b), and personal jurisdiction over each of the Parties. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and CERCLA section 113(b), 42 U.S.C. § 9613(b). Solely for the purposes of this Consent Decree and the underlying Complaint, Settling Defendants waive all objections and defenses that Settling Defendants may have to the jurisdiction of the Court or to venue in this district.

19841078

10. The Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree if necessary.

### III. PERMANENT INJUNCTION AND DECLARATION OF LIABILITY

11. The Court's Order Granting Summary Judgment, including the declaration of liability and permanent injunction, is attached to this Consent Decree as Exhibit A and incorporated herein.

### IV. SETTLEMENT OF DISPUTED CLAIMS

12. This Consent Decree resolves Settling Defendants' liability for Response Costs DTSC incurred before January 1, 2018 and for any Response Costs associated with the entry of this Consent Decree that DTSC incurs between January 1, 2018 and the Effective Date (i.e. negotiating, issuing public notice or seeking judicial entry). For the avoidance of doubt, this Consent Decree does not resolve Response Costs DTSC incurs after January 1, 2018, reviewing, and overseeing the implementation of, the Addendum to Remedial Investigation/Feasibility Study Workplan, 90-Day Dual-Phase Extraction Pilot Test, dated December 29, 2017, that Defendants submitted to DTSC on December 31, 2017. Settling Defendants reserve all their rights to object to such costs. DTSC agrees to that resolution in exchange for consideration from Settling Defendants, including payment by Settling Defendants to reimburse a portion of DTSC's Response Costs already incurred in connection with releases and/or threatened releases of hazardous substances at and/or from the Site.

13. Nothing in this Consent Decree shall be construed as an admission by Settling Defendants of any issue of law or fact or of any violation of law, beyond those issues of fact and law established in the Order Granting Summary Judgment, ECF No. 48. Except as otherwise provided by this Consent Decree, this Consent Decree shall not prejudice, waive or impair any right, remedy or defense that Settling Defendants may have in any other or further legal proceeding.

14. Settling Defendants consent to, and shall not challenge, entry of this Consent Decree, the terms of this Consent Decree, or this Court's jurisdiction to enforce this Consent Decree. Settling Defendants further consent to the Court's entry of the Proposed Order attached to this Consent Decree as Exhibit B.

15. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the Parties.

V. **DEFINITIONS**

16. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA, in the HSAA or in regulations promulgated under CERCLA shall have the meaning assigned to them therein. Whenever terms listed below are used in this Consent Decree, the definitions below shall apply.

17. "Completion of the Remediation" shall mean when DTSC gives the written notice specified in Paragraph 6.24 of the 2008 Remedial Action Order.

18. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next Day.

19. "Order Granting Summary Judgment" shall mean the "Order GRANTING Motion for Summary Judgment (Dkt. No. 30)" that the Court issued on October 2, 2017 (ECF No. 58).

20. "DTSC" shall mean the State of California Department of Toxic Substances Control, and its predecessors and successors. DTSC is a public agency of the State of California organized and existing under and pursuant to California Health and Safety Code § 58000 et seq. Under California law, DTSC is the state agency responsible for determining whether there has been a release and/or threatened release of hazardous substances into the environment, and for determining the actions to be taken in response thereto.

19841078

21. "Effective Date" shall mean the date the Court enters an Order approving this Consent Decree.

22. "Fair Market Value" shall have the meaning specified in California Code of Civil Procedure section 1263.320.

23. "Parties" shall mean DTSC and Settling Defendants.

24. "Plaintiff" shall mean DTSC.

25. "Property" shall mean the real property, at 538 West 5th Street, in San Pedro, Los Angeles County, California, identified as Assessor's Parcel Number 7451-027-004.

26. "Response Actions" shall mean all of "removal," "remedial" or "response" actions as those terms are defined by CERCLA § 101, 42 U.S.C. § 9601, related to the release and/or threatened release of hazardous substances at or from the Site, including into soil and groundwater.

27. "Response Costs" shall mean all costs of "removal," "remedial action," or "response" as those terms are defined by CERCLA § 101, 42 U.S.C. § 9601, related to the release and/or threatened release of hazardous substances at or from the Site, including into soil and groundwater.

28. "Settling Defendants" shall mean World Cleaners Inc. and 538 West 5th Street, San Pedro, Inc.

29. "Site" shall mean the Property, however for purposes of this Consent Decree, the Site includes the vertical and areal extent of the hazardous substance contamination that is or has been present at, beneath, and/or from the Property, including in the soil and/or groundwater.

**VI.    SETTLING DEFENDANTS' OBLIGATIONS**

30. World Cleaners or its designee shall pay DTSC $100,000 within thirty (30) Days of the Effective Date.

31. Sale of the Property:

19841078

a. 538, Inc. consents to recording a lien on the Property in the amount of $100,000 in the form of Exhibit C to this Consent Decree. 538, Inc. agrees not to contest the lien on the Property. Further, from the date it executes this Consent Decree, 538, Inc. until the date that lien is recorded, 538, Inc. will not agree to the recording of any other liens or encumbrances on the Property.

b. 538, Inc. agrees to use commercially reasonable efforts to sell the Property as soon as reasonably practicable after the Completion of the Remediation, and to commence no later than six months after the Completion of Remediation. 538, Inc. has no obligation to attempt to sell the Property prior to Completion of the Remediation. At no time, however, may 538, Inc. sell the Property in other than an arms-length transaction or for less than its Fair Market Value.

c. 538, Inc. shall use commercially reasonable efforts to sell the Property for Fair Market Value and to incur only commercially reasonable costs of sale for the sale of the Property. Within three (3) Days of entering or modifying any listing agreement, Settling Defendants shall provide DTSC a copy of that Agreement.

d. For purposes of this Consent Decree, 538, Inc. shall be deemed to have made commercially reasonable efforts to sell the Property if it does both of the following: 1) Enters into a listing agreement with a licensed commercial real estate broker to list the Property at Fair Market Value and 2) Accepts the highest bona fide offer to purchase the Property in as-is condition, and without representations or warranties, for Fair Market Value.

19841078

e. Any purchase agreement and escrow instructions for the sale of the Property shall require the escrow agent to pay DTSC the sum of $100,000.

f. Within five (5) Days of opening escrow to sell the Property, Settling Defendants shall notify DTSC in writing and shall provide DTSC with a copy of the agreement to sell the Property and escrow agreement. As early as possible after opening escrow, Settling Defendants shall request a preliminary Seller's Estimated Settlement Statement from the escrow agent and provide that statement to DTSC. Within fifteen (15) Days of its receipt of the Estimated Settlement Statement, DTSC may object to the sale price for the Property as being below Fair Market Value. Any objection must be in writing, and must state with specificity the basis of the objection. If such an objection is made, the parties will promptly confer to determine if the objection can be satisfactorily resolved. The Settling Defendants may not close the sale unless DTSC has withdrawn its objection. A determination by DTSC that the Property is being sold for less than Fair Market Value shall not be subject to judicial review.

g. Unless DTSC has objected to the sale in accordance with the previous paragraph, on the day appointed for the close of escrow, DTSC will execute and provide to the escrow agent a release of the lien, which the escrow agent may record with the County Recorder.

h. Within three (3) Days of escrow closing, the escrow agent shall pay DTSC the funds specified in subparagraph (e) of this Paragraph.

19841078

        i. Within ten (10) Days of the close of escrow, Settling Defendants shall provide both the Seller's Estimated Settlement Statement and a signed report setting forth a cash based accounting of the calculation of the Net Sale Proceeds, i.e., showing the gross sale price, and each item deducted from same in calculating the Net Sale Proceeds.

        j. If 538, Inc. does not sell the Property within three years after the Completion of the Remediation, DTSC will be entitled to exercise its rights on the lien, including but not limited to a right to cause a foreclosure on the lien.

32. At the time designated in section 5.13 of the 2008 Remedial Action Order, 538, Inc. will promptly record a land-use covenant to be provided by DTSC that shall limit use of the Property to commercial or industrial and protects the ongoing cleanup activities.

33. Settling Defendant's payment obligations shall be deemed to have been satisfied in full upon: Delivery of the payments due under Paragraphs 30 and 31. The payments specified in Paragraphs 30 and 31 shall be made by electronic funds transfer certified or cashier's check made payable to Cashier, California Department of Toxic Substances Control, and shall bear on its face both the docket number of this proceeding and the phrase "Site Code 401317."

    a. The payments shall be sent to:
        Cashier
        Accounting Office, MS-21A
        Department of Toxic Substances Control
        1001 I Street
        P.O. Box 806
        Sacramento, CA 95812-0806

    b. A copy of the check shall be mailed to:

        Debra Schwartz, Esq,
        California Department of Toxic Substances Control
        9211 Oakdale Ave.
        Chatsworth, CA 91311
        Or e-mailed to debra.schwartz@dtsc.ca.gov in .pdf or .jpg format.

19841078

34. This Consent Decree is conditioned upon full execution of the Settling Defendants' respective obligations set forth in Paragraphs 30 through 32 and the Settling Defendants' compliance with the Order Granting Summary Judgment. If these conditions are not met then, at the discretion of DTSC and with reasonable notice to Settling Defendants, this Consent Decree shall be voidable. However, if the failure to comply is limited to one Settling Defendant's failure to comply with its obligations under Paragraphs 30 through 32, then, at DTSC's discretion, this Consent Decree is voidable against that Settling Defendant only and DTSC may then proceed to litigate the Complaint against that Settling Defendant. Nothing in this paragraph shall preclude DTSC from enforcing any part of this Consent Decree.

## VII. ACCESS TO INFORMATION

35. Within thirty (30) Days of the Effective Date, Settling Defendants shall have provided to DTSC copies of any and all records, documents, and information within its possession or control, or that of its agents, relating to: (a) the ownership, operation or control of the Site; (b) the purchase, storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances in connection with the Site; (c) releases and/or threatened releases of hazardous substances at or from the Site, including the soil and groundwater; and (d) removal, remedial or Response Actions conducted by any person at the Site. If Settling Defendants believe they produced all such documents in the course of this litigation, they may comply with this Paragraph by sending DTSC a signed letter representing and warranting that they have already produced all information subject to this Paragraph. The letter shall identify each day of production. Sending such a letter shall not absolve Settling Defendants of their obligations under Paragraph 36.

19841078

36. If after the Effective Date, Settling Defendants obtain or discover any records, documents or information described in Paragraph 35 not previously provided to DTSC, Settling Defendants agree to provide DTSC with copies of the additional records, documents or information within ten (10) Days of the date Settling Defendants discover or obtain the records, documents or information.

## VIII. COVENANT NOT TO SUE BY DTSC

37. Except as expressly provided in Section IX (DTSC's Reservation of Rights) of this Consent Decree, DTSC covenants not to sue Settling Defendants pursuant to CERCLA or the HSAA to: (a) recover Response Costs related to the Site that DTSC incurred before January 1, 2018, or that DTSC incurs between January 1, 2018, and the Effective Date (i.e. negotiating, issuing public notice or seeking judicial entry), including Response Costs associated with groundwater remediation relating to any hazardous substances released at the Site; or (b) require Settling Defendants to conduct Response Actions, including removal or remedial actions, related to the release and/or threatened release of hazardous substances at or from the Site, including the soil and groundwater. For the avoidance of doubt, this Covenant Not to Sue does not extend to Response Costs DTSC incurs after January 1, 2018, reviewing, and overseeing the implementation of, the Addendum to Remedial Investigation/Feasibility Study Workplan, 90-Day Dual-Phase Extraction Pilot Test, dated December 29, 2017 that Defendants submitted to DTSC on December 31, 2017. Settling Defendants reserve all their rights to object to such costs. This Covenant Not to Sue is conditioned upon the complete and satisfactory performance by Settling Defendants of all their obligations under this Consent Decree, including the obligations imposed by the Order Granting Summary Judgment. With reasonable notice to Settling Defendants, this Covenant Not to Sue shall be revocable and thereafter deemed not effective if the Settling Defendants fail to fully perform their obligations stated in the Order Granting Summary Judgment or as to a Settling Defendant(s) who fails to comply with the

19841078

requirements of Paragraphs 30 through 32 and 35 through 36 of this Consent Decree. With reasonable notice to Settling Defendants, nothing in this paragraph shall preclude DTSC from enforcing any part of this Consent Decree.

## IX. DTSC'S RESERVATION OF RIGHTS

38. <u>Claims Regarding Other Matters.</u> DTSC reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within DTSC's Covenant Not to Sue (Section VIII).

39. <u>Reservation of Claims.</u> DTSC reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to the following matters:

    a.    Failure of Settling Defendants to meet the requirements of this Consent Decree;

    b.    Damage to natural resources, as defined in CERCLA section 101(6), 42 U.S.C. § 9601(6), including all costs incurred by any natural resources trustees;

    c.    Liability resulting from Settling Defendant's introduction of any hazardous substance, pollutant, or contaminant to the Site after the Effective Date;

    d.    Liability resulting from overt acts by Settling Defendants after the Effective Date that exacerbate hazardous substance conditions existing at or from the Site;

    e.    Claims based on liability arising from the past, present, or future disposal of hazardous substances at sites or locations other than the Site and

    f.    Claims based on criminal liability.

40. <u>Government Authority.</u> Except as expressly provided in the Consent Decree, nothing in the Consent Decree is intended nor shall it be construed to

19841078

preclude DTSC from exercising its authority under any law, statute or regulation. Furthermore, nothing in the Consent Decree is intended, nor shall it be construed, to preclude any other state agency, department, board or entity or any federal entity from exercising its authority under any law, statute or regulation.

41. <u>Claims Against Other Persons.</u>  DTSC reserves, and this Consent Decree is without prejudice to, all rights, claims, and causes of action DTSC may have against any person other than Settling Defendants.  Nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action, which DTSC may have against any person or other entity not a signatory to this Consent Decree or included in Paragraph 50.

42. <u>Unknown Conditions/New Information</u>. Notwithstanding any other provision in the Consent Decree, DTSC reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order seeking to compel Settling Defendants to perform response activities at the Site and/or to pay DTSC for additional Response Costs, if:

  a. Either of the following occurs: (i) conditions at the Site, previously unknown to DTSC, are discovered, or (ii) information previously unknown to DTSC, is received, in whole or in part; and

  b. DTSC determines that the previously unknown conditions or new information together with other relevant information indicate that the Response Actions at the Site are not protective of human health or the environment.

## X. COVENANT NOT TO SUE BY SETTLING DEFENDANTS

43. Settling Defendants covenant not to sue DTSC, and agree not to assert any affirmative claims or causes of action against DTSC or any DTSC contractors

19841078

or employees that arise out of the transaction or occurrence that is the subject matter of the DTSC's complaint, or for any injuries, losses, costs, or damages caused or incurred as a result of the performance of the requirements of this Consent Decree or DTSC's Response Actions at the Site.

44. In any legal proceedings that DTSC may initiate against Settling Defendants for non-compliance with this Consent Decree, Settling Defendants may raise any and all defenses that Settling Defendants deem to be relevant to the issue of whether or not they have complied with the terms of the Consent Decree.

## XI. EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION

45. With regard to claims for contribution against Settling Defendants for "Matters Addressed" in this Consent Decree, the Parties agree, and the Court finds as follows:

    a. This Consent Decree constitutes a judicially approved settlement within the meaning of CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2).

    b. This Consent Decree requires that Settling Defendants pay certain Response Costs with respect to their liability at the Site.

    c. Settling Defendants are entitled to the contribution protection provided by CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2), and by state statutory and common law for the "Matters Addressed" in this Consent Decree, except for actions and claims identified in Section VIII (DTSC's Reservation of Rights).

46. <u>"Matters Addressed"</u>. The "Matters Addressed" in this Consent Decree are all Response Actions taken or to be taken and all Response Costs incurred or to be incurred, at or in connection with the Site, by DTSC, or any other person.

47. The protection provided for in this Section XI is conditioned upon compliance by Settling Defendants with its obligations under the Order Granting Summary Judgment and Paragraphs 30 through 32 of this Consent Decree.

19841078

48. Nothing in this Consent Decree limits or impairs the right of DTSC to pursue any other person for unrecovered Response Costs incurred by DTSC.

## XII. NOTIFICATION

49. Notification to or communication among the Parties as required or provided for in this Consent Decree shall be addressed as follows:

For DTSC:

>Joseph Cully, Project Manager
>Cypress Cleanup Program
>California Department of Toxic Substances Control
>Corporate Avenue
>Cypress, CA 91311-6505

>California Department of Toxic Substances Control
>Office of Legal Counsel, MS-23A
>P.O. Box 806
>Sacramento, CA 95812-0806

For Settling Defendant World Cleaners:

>Michael Gallagher
>Erin Poppler
>BASSI EDLIN HUIE & BLUM LLP
>500 Washington Street, Suite 700
>San Francisco, CA 94111

>David R. Isola
>ISOLA LAW GROUP, LLP
>405 West Pine Street
>Lodi, CA 95240

For Settling Defendant 538, Inc.:

>David R. Isola
>ISOLA LAW GROUP, LLP
>405 West Pine Street
>Lodi, CA 95240

## XIII. GENERAL PROVISIONS

50. <u>Parties Bound.</u>  This Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties and their representatives, successors, heirs, legatees, and assigns.

19841078

51. <u>No Rights in Other Parties.</u>  Except as provided in Paragraph 50 regarding parties bound, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

52. <u>No Waiver of Enforcement.</u>  The failure of DTSC to enforce any provision of this Consent Decree shall in no way be deemed a waiver of such provision or in any way affect the validity of this Consent Decree.  The failure of DTSC to enforce any such provision shall not preclude it from later enforcing the same or any other provision of this Consent Decree.

53. <u>Attorneys' Fees.</u>  Except as expressly provided in this Consent Decree, the Parties will not seek to recover attorneys' fees and/or litigation costs against each other.

54. <u>Final Agreement.</u> This Consent Decree constitutes the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.

55. <u>Modifications.</u>  This Consent Decree may be modified only upon written approval of the Parties and with the consent of the Court.

56. <u>Counterparts.</u>  This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

57. <u>Agent.</u> Settling Defendants have appointed and authorized the agents identified in Paragraph 49 to this Consent Decree to receive notices with respect to all matters arising under or relating to this Consent Decree.

XIV. **ENTRY OF THE CONSENT DECREE**

58. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days.  The Consent Decree also is subject to a public comment period of not less than thirty (30) Days.  DTSC may modify or withdraw its consent to this Consent Decree if comments received during the public comment period

19841078

disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

59. If, for any reason, the Court declines to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

60. Each signatory to this Consent Decree certifies that he or she is fully authorized by the Party he or she represents to enter into the terms and conditions of this Consent Decree, to execute it on behalf of the party represented, and to legally bind that party to all the terms and conditions of this Consent Decree.

Dated: **8/13/18**

*/s/ Dale S. Fischer*
Honorable Dale Fischer
United States District Judge

Party Signatures on pages to follow

California Department of Toxic Substances

DATE: _____  By: _____
                                    SIGNATURE

                                    _____
                                    NAME (printed or typed)

                                    _____
                                    TITLE (printed or typed)

World Cleaners, Inc.

DATE: _____  By: _____
                                    SIGNATURE

                                    _____
                                    NAME (printed or typed)

538 West 5th Street, San Pedro, Inc.

DATE: _____  By: _____
                                    SIGNATURE

                                    _____
                                    NAME (printed or typed)

19841078

APPROVED AS TO FORM AND CONTENT:

Dated: _____
James Potter
Deputy Attorney General
Attorney for California Department of
Toxic Substances Control

BASSI EDLIN HUIE & BLUM LLP

Dated: _____
Michael E. Gallagher
Erin K. Poppler
Attorneys for World Cleaners, Inc.

ISOLA LAW GROUP LLP

Dated: _____
David R. Isola
Attorneys for World Cleaners, Inc.

ISOLA LAW GROUP LLP

Dated: _____
David R. Isola
Attorney for 538 West 5th Street, San Pedro, Inc.

19841078